```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

Luis Mayancela et al.

    v.                                    Case No. 20-cv-998-SM

Rob Parker d/b/a Rob Parker & Son
Roofing & Construction et al.

    v.

GM Construction and Roofing, Inc.

## REPORT AND RECOMMENDATION

Rob Parker d/b/a Rob Parker & Son Roofing & Construction ("Parker") filed a third-party complaint against GM Construction and Roofing, Inc. ("GM Construction") seeking indemnification under the terms of the parties' subcontractor agreement.  On January 7, 2022, the Clerk of Court entered default against GM Construction, (Doc. No. 43), and on August 2, 2022, Parker moved for default judgment (Doc. No. 46) pursuant to Federal Rule of Civil Procedure 55(b)(2).  The motion for default judgment is before the court for a recommendation as to disposition.  As explained below, the court recommends that Parker's motion be granted in part and denied in part. The court also recommends that damages be awarded in the amount of $325,000.00.

## STANDARD OF REVIEW

When a party moves for a default judgment under Rule 55(b)(2), the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine

whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). The defaulting party is "taken to have conceded the truth of the factual allegations in the complaint." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002). Admitting the truth of the factual allegations, however, "does not admit the legal sufficiency of [the] claims." 10 James W. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). For that reason, the court reviews the admitted facts in light of the elements of the claims pleaded before entering a default judgment. Sampson v. Lambert, 903 F.3d 798, 805-06 (8th Cir. 2018); Neff v. Mediation Processing Servs., LLC, No. 21-CV-310-JL, 2021 WL 7082838, at *1 (D.N.H. Sept. 27, 2021), report and recommendation adopted, No. 21-CV-310-JL, 2021 WL 7082833 (D.N.H. Oct. 14, 2021).

## BACKGROUND

By virtue of its default, GM Construction concedes the following facts alleged in Parker's third-party complaint. Wesfield Construction Co. ("Wesfield") served as the general contractor on a construction project, which called for work to be completed at a building owned by the City of Concord, New Hampshire. On April 4, 2019, Wesfield entered into a subcontractor agreement with Parker, in which Parker agreed to complete the roofing work at the project. Parker then entered

2

into a separate subcontractor agreement with GM Construction (the "Agreement"), in which GM Construction agreed to provide roofing labor for the project.  Third-Party Compl. (Doc. No. 12, ¶ 11).

The terms of the Agreement also required GM Construction to "indemnify and hold harmless [Parker] . . . from all claims, losses, damages, expenses, fees including attorney fees, costs, settlements and judgments arising out of the performance of [GM Construction]. . . ."  Id. ¶ 12; see also Subcontractor Agreement, Ex. D to Supp. Brief (Doc. No. 47-4, § 5).  Further, GM Construction was "responsible for maintaining a safe work environment for its employees and complying with all Occupational Safety and Health Administration safety requirements."  Third-Party Compl. (Doc. No. 12, ¶ 13).

First-party plaintiff, Luis Mayancela, was employed by GM Construction to perform roofing work at the project.  While performing the roofing work, Mr. Mayancela fell from a ladder and suffered severe injuries.  On the day of his accident, GM Construction failed to provide Mr. Mayancela with necessary protective equipment, such as a harness.  To recover for his injuries, Mr. Mayancela and his spouse, Maria Sanisaca, filed suit on October 2, 2020.  They did not name GM Construction as a defendant in their lawsuit,[1] and instead alleged claims against

---

[1] Mr. Mayancela's receipt of workers' compensation benefits under Massachusetts law, see Supp. Brief (Doc. No. 48, ¶ 12),

3

Parker, and later Wesfield, for negligence and loss of consortium. See Compl. (Doc. No. 1); Amd. Compl. (Doc. No. 16).

Parker, however, filed a third-party action against GM Construction on January 14, 2021, asserting that GM Construction was the party at fault and that Parker was entitled to indemnification under the terms of their Agreement. Third-Party Compl. (Doc. No. 12). GM Construction was served with the complaint and summons on February 18, 2021. (Doc. No. 23). When GM Construction did not file a response within the time allowed, the Clerk of Court entered default against it. (Doc. No. 43).

On April 11, 2022, Mr. Mayancela and Ms. Sanisaca entered into a settlement agreement with Parker and Wesfield. (Doc. No. 46, ¶ 5). As part of the agreement, the plaintiffs released their claims against Parker and its liability insurance carrier, Ohio Mutual Insurance Group, in exchange for payment in the amount of $325,000.00. Id. ¶ 6. The plaintiffs agreed the total settlement payment was made in full and final satisfaction of their claims. Id. ¶ 8. On August 2, 2022, Parker moved for default judgment as to GM Construction. (Doc. No. 46). Following the October 27, 2022 hearing on the motion for default judgment, Parker submitted supplemental briefing (Doc. Nos. 47, 48), which included a copy of its Agreement with GM

---

released his direct claims against GM Construction. See M.G.L. c. 152, § 23.

4

Construction, as well as evidence supporting the reasonableness of the settlement amount.[2]

## DISCUSSION

Parker brings two claims[3] against GM Construction. In Count I, Parker seeks indemnification under the terms of the Agreement for all damages owed to Mr. Mayancela and Ms. Sanisaca. Parker also seeks to recover the same damages under a claim for breach of contract (Count III). Based on counsel's representations at the October 27, 2022 hearing, Parker seeks only to recover judgment in the amount it paid pursuant to the settlement agreement, $325,000.00, and does not seek an award of attorneys' fees or costs. The court first addresses the sufficiency of Parker's claims before turning to whether Parker has satisfied its burden to be entitled to an award of damages.

---

[2] "On a motion for default judgment, a court may . . . consider any affidavits or evidence on the record." Amguard Ins. Co. v. Santos Remodeling, Inc., No. 14-14745-FDS, 2016 WL 424961, at *1 n.1 (D. Mass. Feb. 3, 2016) (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 17-20 (1st Cir. 2003)); see also Shannon F. v. Portsmouth School Dist. SAU 52, No. 14-cv-368-JL, 2017 WL 1233815, at *6 (D.N.H. Jan. 27, 2017) (quotation omitted) (recognizing that based on similarities in the Rule 55 and Rule 12(b)(6) standards, the court can consider "documents central to the plaintiff's claims"), R&R adopted, (D.N.H. Feb. 22, 2017).

[3] At the October 27, 2022 hearing on the motion for default judgment, counsel for Parker withdrew its claim for contribution (Count II).

### I. Liability Under Indemnification (Count I)

Under New Hampshire law, a right to indemnity exists where "there is an express duty to indemnify." Gray v. Leisure Life Industries, 165 N.H. 324, 327 (2013) (quotation omitted). When a contract contains a provision for indemnity, the express duty to indemnify arises, and the scope of the duty is determined by the specific terms of the contract. Id. at 328. While an express indemnity agreement is construed strictly and without consideration of equitable principles, id., the court interprets the agreement by looking "to the parties' intent at the time the agreement was made," and ascribing common meaning to the words and phrases used by the parties. Kessler v. Gleich, 161 N.H. 104, 112 (2010). In the absence of ambiguous terms, the court limits its review "to the four corners of the document itself." Id.

If the indemnity agreement is enforceable and applicable, the indemnitee must also show that it is either potentially liable or actually liable to the original plaintiffs. See One Beacon Ins., LLC v. M&M Pizza, Inc., 160 N.H. 638, 643-44 (2010) (recognizing that if the indemnitor is afforded an opportunity to participate in settlement or in conducting the defense, then the indemnitee need only show "potential liability" rather than the greater burden of "actual liability").

A. <u>The Parties' Indemnification Provision</u>

The parties' indemnification provision set forth in the Agreement, requires GM Construction to:

> [I]ndemnify and hold harmless [Parker], Owner, Design Professionals, and their respective agents and assigns from all claims, losses, damages, expenses, fees including attorney fees, costs, settlements and judgments arising out of the performance of [GM Construction] or resulting in whole or in part from the actual or alleged acts, omissions, or breaches of this Subcontract . . . .

Subcontractor Agreement, Ex. D to Supp. Brief (Doc. No. 47-4, § 5). GM Construction's performance under the Agreement included providing "all labor to remove and replace existing roofing material . . ." and complying with all applicable building codes and regulations. <u>Id.</u> § 1.

Parker asserts that the indemnity provision is enforceable and applicable to its settlement payment to Mr. Mayancela and Ms. Sanisaca because their injures arose from GM Construction's performance under the Agreement. The court agrees. The specific terms of the Agreement and indemnity provision impose a duty on GM Construction to indemnify Parker for settlements that arise out of[4] GM Construction's performance under the Agreement. GM Construction's performance included its provision of labor to

---

[4] Under New Hampshire law, the phrase "arising out of" has been interpreted as "a very broad, general and comprehensive term . . ." and as meaning "originating from or growing out of or flowing from." <u>Merrimack Sch. Dist. v. Nat'l School Bus Serv., Inc.,</u> 140 N.H. 9, 13 (1995) (quotation omitted).

7

remove and replace the roof, as well as its compliance with applicable building codes and regulations. Parker's settlement payment to Mr. Mayancela and Ms. Sanisaca compensated the parties for injuries sustained by Mr. Mayancela after he fell from a ladder while performing roofing work for GM Construction. These undisputed facts demonstrate that the settlement payment arises out of GM Construction's performance under the Agreement. Thus, the indemnity provision is enforceable and applicable to Parker's settlement payment, so long as Parker satisfies its burden regarding its liability.

B. Parker's Liability to Original Plaintiffs

Consistent with Parker's position, the potential liability standard applies because GM Construction had notice and opportunity to assume Parker's defense as early as February 18, 2021, the date when GM Construction was served with Parker's Third-Party Complaint. See One Beacon Ins., LLC, 160 N.H. at 643-44; see also (Doc. No. 23). To satisfy its burden of showing potential liability to Mr. Mayancela under a claim of negligence, Parker must demonstrate that it owed Mr. Mayancela a duty, that it breached that duty, and that the breach proximately caused Mr. Mayancela's injuries. See Macie v. Helms, 156 N.H. 222, 224 (2007). In establishing that a breach of a duty proximately caused the plaintiff's injuries, there must be a showing that "the injury would not have occurred

without the negligent conduct", and that the negligent conduct was a "substantial factor" in bringing about the injury. Estate of Joshua T. v. State, 150 N.H. 405, 407-08 (2003) (quotation omitted).

The court finds that Parker has met its burden to show that it is at least potentially liable for Mr. Mayancela's injuries based on negligence. As the subcontractor responsible for supervising the roofing work at the project, Parker had a duty to ensure the work was being performed in a manner that was safe and that complied with applicable law. See Wesfield and Parker Subcontractor Agreement (Doc. No. 47-3, §§ 1, 8, 9.3) (outlining Parker's obligations to supervise the roofing work and ensure compliance with contract documents and applicable law). New Hampshire law required GM Construction to provide its employees with protective equipment,[5] yet the record establishes that Mr. Mayancela did not have necessary safety equipment, including a harness, on the day he was injured. See Dep. Tr. of Luis Mayancela, Ex. E to Supp. Brief (Doc. No. 47-5, at 2-8); see also Third-Party Compl. (Doc. No. 12, ¶ 22). Parker's failure to ensure that GM Construction provided protective equipment to its employees likely constituted a breach of its duty. Where Mr. Mayancela sustained injuries when he fell from a ladder

---

[5] See N.H. Rev. Stat. Ann. § 281-A:64, I (requiring employers to provide their employees with personal protective equipment and to ensure that employees use such equipment regularly).

9

while performing roofing work at the project without protective equipment, Third-Party Compl. (Doc. No. 12, ¶ 7), Parker's breach was likely a substantial factor in causing Mr. Mayancela's injuries, and the injuries likely would not have occurred but for this breach.

The court similarly finds that Parker is also potentially liable to Ms. Sanisaca for her loss of consortium claim. See Brann v. Exeter Clinic, Inc., 127 N.H. 155, 161 (1985) (noting that loss of consortium elements include loss of service and society and that a relevant consideration is the extent of injuries to the person whose service or society is claimed as a loss). Parker submitted evidence of Mr. Mayancela's permanent injuries, including his inability to lift or carry over 15 pounds and his inability to walk or stand for a prolonged period. See Supp. Brief (Doc. No. 48, ¶¶ 6-9). Where Parker's breach of its duty to Mr. Mayancela contributed to his permanent injuries, the court finds that Parker is potentially liable for Ms. Sanisaca's loss of Mr. Mayancela's service and society. Accordingly, where Parker has established its potential liability to the plaintiffs, and therefore, the sufficiency of its claim for indemnification against GM Construction,[6] the district judge should enter default judgment as to this claim.

---

[6] While Mr. Mayancela's receipt of workers' compensation benefits under Massachusetts law released his claims against GM Construction, see M.G.L. c. 152, § 23, the court is satisfied that under both Massachusetts and New Hampshire law, the

10

## II. Liability Under Breach of Contract (Count III)

Parker's breach of contract claim parrots its claim for indemnification and is governed by the same analysis set forth in Section I. Assuming that judgment will enter in favor of Parker on Count I, the court declines to address the breach of contract claim and recommends it be dismissed as moot.

## III. Damages[7]

"In the case of defaulting defendants, allegations of damages are not deemed admitted in the context of a default

---

allocation of risk through contractual indemnity agreements (as opposed to a common law right of indemnity), is permissible and enforceable because such allocation neither conflicts with public policy nor workers' compensation statutes prohibiting direct recovery from the employer. MacGlashing v. Dunlop Equipment Co., Inc., 89 F.3d 932, 939 (1st Cir. 1996) (applying Massachusetts law and holding that contractual indemnification provisions do not conflict with M.G.L. c. 152, § 23, particularly where risk allocation is common in the construction industry and the contracting parties were sophisticated business entities); Spellman v. Shawmut Woodworking & Supply, Inc., 445 Mass. 675, 679-80 (2006) (reaching the same conclusion); see also Wentworth Hotel, Inc. v. F.A. Gray, Inc., 110 N.H. 458, 460-61 (holding that New Hampshire's workers' compensation statute did not preclude a party from enforcing a claim for indemnification, implied in a service agreement, against an employer because the employer had an independent duty to indemnify and purportedly breached its obligation to perform work in a workmanlike manner).

[7] The court did not hold a hearing on damages. Rule 55(b)(2) "makes an evidentiary hearing an available tool, not a prerequisite, to the determination of a damage award." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir. 2015).

11

judgment, and it is the plaintiff's burden to establish any entitlement to recovery." Joe Hand Promotions, Inc. v. Rajan, No. 10-40029-TSH, 2011 WL 3295424, at *3 n.2 (D. Mass. July 28, 2011) (internal quotation marks and citation omitted).

Parker seeks $325,000.00 in damages, reflecting the settlement amount paid by Parker to Mr. Mayancela and Ms. Sanisaca under the settlement agreement. Where an indemnitee seeks indemnification of a settlement payment made voluntarily, the indemnitee must establish the "reasonableness of the amount of the settlement . . . ." Morrissette, 114 N.H. at 390. The indemnitee must also show that the settlement was "entered into in good faith." Coco v. Jaskunas, 159 N.H. 515, 520 (2009). In evaluating the reasonableness of settlement and whether it was entered into in good faith, courts consider the viability of the parties' claims and defenses, costs incurred, and risks associated with trial. See id. at 520-21. For example, in Coco, the court held that the indemnitee's decision to mitigate damages was reasonable and did not preclude the indemnitee from pursuing indemnification because while the indemnitee's claim had a potential likelihood of success, the indemnitee had incurred significant attorneys' fees and expenses and risked a greater loss at trial. Id.

As explained above, Mr. Mayancela and Ms. Sanisaca had colorable negligence and loss of consortium clams against Parker. In addition, the expert reports submitted by Parker

opine that Mr. Mayancela's injuries have resulted in his permanent disability, as well as a 36% whole person impairment under the AMA Guides to the Evaluation of Permanent Impairment. See e.g. Medical Report of George P. Whitelaw, MD, Dec. 30, 2021, Ex. C to Supp. Brief (Doc. No. 48-3, at 5). Given the extensive injuries suffered by Mr. Mayancela at the age of 24, the court finds that Parker risked an award of damages greater than $325,000.00 at trial. Parker would have also incurred additional attorneys' fees and costs if it proceeded to trial. Thus, based on the undisputed evidence before it, the court finds that Parker entered into the settlement agreement in good faith, and that the settlement amount of $325,000.00 was fair and reasonable. Accordingly, the district judge should award Parker damages in the amount of $325,000.00.

## CONCLUSION

For the foregoing reasons, the court recommends that the district judge: (1) grant Parker's motion for default judgment (Doc. No. 46) as to its claim for indemnification (Count I); (2) award Parker damages in the amount of $325,000.00; and (3) dismiss the remaining claim (Count III) as moot.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this

Report and Recommendation are subject to review in the district court.  See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal.  See id.  Failure to file any objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

February 23, 2023

cc:   Counsel of Record